CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 11, 2024
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LARRY YOUNG, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00260 |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| KILINE MADISON, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Larry Allen Young, Jr., a Virginia inmate proceeding *pro se*, brought this action

under 42 U.S.C. § 1983 against Kiline Madison, Police Chief for the Town of Orange, and

Robert Bragg, a police detective, alleging excessive force. Defendants move for summary

judgment. For the reasons discussed below, defendants' motion will be granted in part and

denied in part.

## I.

Plaintiff originally filed this action in the Eastern District of Virginia. (*See* Compl. [ECF

No. 1].) The case was transferred to this court on May 8, 2023. (Mem. Op. [ECF No. 3].) The

facts set forth herein are taken from the pleadings, including the complaint and declarations

and exhibits filed by the parties. (*See* Ex. A, Madison Decl. [ECF Nos. 37-1, 39-1]; Ex. B, Bragg

Decl. [ECF Nos. 37-2, 39-2]; Ex. C, Medical Records [ECF No. 37-3]; Young Decl. [ECF No.

44]; Young Exhibits [ECF No. 44-1]).

## A. General background

In February 2022, Young committed several crimes, including breaking into a house in Orange, Virginia, stealing a firearm from the house, murdering an individual, and attempting to abduct another person on the University of Virginia campus. Young also faces charges for allegedly molesting his stepchildren. Prior to his arrest, Young had worked as a University of Virginia Police officer and as a Deputy Jailer at the Central Virginia Regional Jail. (Young Decl. ¶ 42.)

## B. Young's allegations

Young's allegations boggle the mind.[1] At some point, Young was apparently detained by the Town of Orange Police Department. At approximately 6:30 a.m. on February 25, 2022, he claims that Defendant Chief of Police Kiline Madison ("Chief Madison") released him from custody,[2] but he demanded that Young give him $10,000 in cash and leave Virginia or he would send fabricated evidence to the Commonwealth attorney, have Young prosecuted, and order "protective services" to take Young's 2-year-old daughter away from him. (Compl. pg. 8 [ECF No. 1].) He also claims that a female officer at the Town of Orange Police Department—the officer who answered to phone when he called to report that his wife had cleaned out the $10,000 he had in his bank account that he was going to use to pay Chief Madison's bribe—had watched him "be sexually tortured and humiliated." (*Id.* at 12.)

---

[1] These bizarre allegations have not been substantiated, let alone proven. But at this stage, the court must accept Young's sworn account of being tortured and sexual assaulted at the hands of these law enforcement officers, even though it appears far-fetched and is undermined by a plethora of evidence in the record.

[2] While in custody, Chief Madison allegedly took Young's pants and underwear, forced him to pull out his own pubic hairs, and made his genital warts bleed. (Compl. pg. 10.)

Young also claims that, after he found himself without pants or underwear and with a bleeding groin (although he says that Chief Madison eventually gave him some pants to wear, but they were too big), he tried to get medicine that he needed daily from his home, and asked for the Town of Orange police to assist him because there was a protective order against him. (*Id.*) The Town of Orange police refused to help, as did the Orange County Sheriff's Office. (*Id.* at 12–13.)

In an effort to retrieve a laptop from his home that Young claims would exonerate him of charges of sexually abusing his children, Young contacted the Virginia State Police, who told him to report to the magistrate's office at the Central Virginia Regional Jail. (*Id.* at 15–16.) Young appeared before the magistrate, and reported the following:

> 1. [He] had been blackmailed and extorted by local law enforcement. 2. [He] discovered that [his] wife was sexually abusing [his] children in [his] home, which caused her to break into [his] home, kidnap the children, and steal [his] vehicle. 3. [He] was currently being blackmailed by local law enforcement. 4. [He has] notified the Town of Orange Police, and the Fluvanna County Sheriff's Office about [his] wife's actions, and they refuse to assist [him]. 5. [He has] proof that [his] wife had sexually assaulted the children at [his] home. 6. [He has] proof local law enforcement had blackmailed and extorted [him] at [his] home.

(*Id.* 16–17.) He further advised the magistrate that his dog and his medicine were at his home, and that a laptop that could clear him of any criminal charges was there as well. (*Id.* at 17.) Young claims that the magistrate advised him that "she did not conduct criminal investigations, [he] would have to call [his] wife to get [his] medication and dog, and [he] could go to the homeless shelter in Culpeper to live." (*Id.* at 18.) According to Young, by 2:00 p.m. on February 25, he

> had not had access to [his] medication for 15 hours, [he] had not
> eaten in 21 hours, and [he] had slept less than 2 hours, over a 30[-
> ]hour span. [He] had no money, no house, dried blood all over
> [his] genitals, and pants that were too big for [him], with no
> underwear underneath of them. In addition to all of this, [he] had
> unsuccessfully attempted to report Chief Madison, and now [he]
> only had 4 hours to obtain $10,000 in cash for him.

(*Id.* at 19.)

Young contacted a friend who gave him $1,500 in cash; Young then contacted a lawyer in Richmond and arranged to meet him at his office at 5:00 p.m. Young rode with his brother to Richmond, met with the attorney, and returned to his brother's residence in Madison County around 10 p.m. Young left his brother's home around 11:45 p.m. and headed to his residence. (*Id.* at 20.)

At approximately 12:10 a.m. on February 26, 2022, Young arrived at his home and parked a few doors down. (*Id.* at 20–21.) He ascertained that his wife was not at the residence and proceeded to retrieve his dog, his rifle, his "plate carrier," his "battlebelt," his "helmet and night vision," and his "daypack," returned to his car, and laid the items in the passenger-side floorboard. (*Id.* at 21.) Soon thereafter, he noticed a car pull up behind him. He reached for the gun he always carried, but it had been "confiscated" by Chief Madison. (*Id.* at 21–22.) Although he reached for the gun on the belt in his floorboard, his driver's side door was opened before he could get to it. (*Id.* at 22.)

The first person Young saw was Chief Madison; he had opened Young's door. Young claims that Chief Madison then sprayed him in the face with pepper spray. (*Id.* at 23.) Chief

Madison and a Detective Bragg[3] tazed Young and eventually removed him from the vehicle, placing him face down on the ground. (*Id.* at 24.) According to Young, one of these men pushed his face into the ground by kneeling on his back and pressing down on his head. Young also claims that one of the officers killed his dog with an extendable baton. (*Id.* at 24–25.)

Defendants placed Young in the back of a police SUV. (*Id.* at 26.) They traveled 4–6 minutes before stopping, at which point they removed Young from the vehicle. They placed him face down onto gravel. He claims they kicked him in the head and back and they questioned him about the laptop "and a thumbdrive that could prove [he] was innocent." (*Id.* at 27.) He told Defendants he didn't know what they were talking about and that he had been working to get Chief Madison's $10,000 bribe. (*Id.*) He told them he had $5,000 in cash and would be able to get the rest. (*Id.*) In response, Det. Bragg allegedly said that he knew Young liked to "choke [his] wife" and "fuck [his] stepdaughter," then proceeded to pull Young's pants "down past [his] knees, and bent [his] feet back[w]ards to [his] shoulder blades." (*Id.* at 27–28.) When Young cried out in pain, Det. Bragg put a handgun in his mouth, which chipped a several of his teeth, cut his bottom lip, and knocked out a tooth. (*Id.* at 28.) Det. Bragg told Young that, if he screamed, he would kill him. (*Id.*)

While Det. Bragg was threatening him, Young claims that he "immediately felt Chief Madison place a cold object against [his] anus, and pull [his] butt cheek open." (*Id.*) Chief Madison then proceeded to anally rape Young with a foreign object, "telling [Young] he wanted [him] to know what it felt like." (*Id.*)

---

[3] Young originally sued Chief Madison and an Unknown Male/Police Officer. Plaintiff later identified the unknown officer as Det. Bragg. (7/26/23 Oral Order [ECF No. 15].)

Chief Madison removed the object from Young's anus and Det. Bragg took the handgun out of his mouth. They asked more questions about the laptop, and then Chief Madison told Det. Bragg to "get a bag." (*Id.* at 29.) Det. Bragg "released [Young's] legs from between [his] shoulder blades, and went into the back hatch of the SUV." (*Id.*) When he returned, he and Chief Madison "started dragging [Young] by [his] arms, with [his] pants down, towards a chain[-]link fence." (*Id.*) When they got to the fence, they handcuffed Young to it and placed an airtight bag over his head, "and Chief Madison began open[-]hand slapping [Young] in [his] testicles, which were exposed, because [his] pants were below [his] knees." (*Id.* at 30.) This lasted 3–5 minutes. (*Id.* at 30–31.)

Fearful that the torture would continue, Young claims that he finally confessed that he had two laptops and a thumb drive in his green day pack in his car. (*Id.* at 31.) Chief Madison removed the laptops and thumb drive, threw them onto the ground, "and stomped on all of them multiple times." (*Id.* at 32.) Chief Madison threatened him further while Det. Bragg brought over a box containing "several cylinder looking tubes . . . ." (*Id.* at 34.) Chief Madison rubbed several swabs inside Young's cheeks then put the swabs in the tubes. (*Id.*) According to Young, Chief Madison then retrieved a white piece of cloth from the paper, removed the handcuff from one of Young's hands, and ordered him to masturbate and ejaculate on the fabric. (*Id.* at 34–35.) But after several minutes of trying, Young claims that he was unable to achieve an erection. (*Id.* at 35.) Chief Madison then wiped the tip of Young's penis with the fabric. (*Id.*) According to Young, he then instructed him to spit on the cloth, but Young complained that he could not spit with a dry mouth. Young claims that Chief Madison then

struck him several times in the solar plexus, causing him to drool, which Chief Madison wiped with the cloth. (*Id.*)

According to Young, the two men then took him back to the SUV, and Chief Madison produced a multi-tool with pliers. (*Id.* at 36.) Young's pants were still below his knees; Det. Bragg grabbed Young from behind, and Chief Madison grabbed his penis. (*Id.* at 36–37.) Chief Madison said, "Every time you look at your penis for the rest of your life, I want you to remember tonight, and what happened when you tried to report us." (*Id.* at 36.) "Chief Madison began grabbing the genital warts ontop [*sic*] of [Young's] penis with the pliars [*sic*], and forcefully ripping them off. . . . Chief Madison was able to rip off 2 warts completely, before [Det. Bragg] could no longer hold [Young] in place." (*Id.* at 37.) The two men maneuvered Young such that he slammed into the ground, and Chief Madison grabbed his penis again. Using the "sharp metal instrument" in the multi-tool, he "carve[d] a line across [Young's] urethra, down [his] penis. Young adds that Chief Madison then sliced [Young's] penis twice with the sharp metal instrument, before releasing [his] penis." (*Id.* at 38.) According to Young, the men then put him back in the SUV and drove him back to his car. After one final threat, they threw him to the ground and drove away. (*Id.* at 39–40.)

In a lengthy complaint, Young asserts the following claims:

1. Fourth Amendment: Chief Madison and Det. Bragg unlawfully seized him when they forcefully extracted him from his vehicle and inflicted excessive and unreasonable force by physically assaulting him, pepper spraying him, tasering him, and killing his dog. (Compl. 41.)

2. Fourth Amendment: defendants unlawfully seized Young when they held him against his will and inflicted excessive and unreasonable force by inserting an object into his anus, suffocating him with airtight plastic, slapping his testicles, and mutilating his penis with a metal object. (*Id.*)

3. Eighth Amendment: defendants intentionally and maliciously inflicted cruel and unusual punishment by physically assaulting him, pepper spraying him, tasering him, killing his dog in front of him, inserting an object into his anus, suffocating him with airtight plastic, slapping his testicles, and mutilating his penis with a metal object. (*Id.*)

4. Fourteenth Amendment: defendants deprived Young of life, liberty, and property without due process of law by unlawfully seizing him, stealing his property, and torturing him. Young was never taken before a magistrate or a judge when the defendants finished torturing him and stealing his property. (*Id.* at 42.)

5. Fourteenth Amendment: defendants deprived Young of life, liberty, and property, without due process of law and denied him equal protection of the law by destroying electronic evidence that would have proven he was innocent of severe criminal allegations, contaminating DNA evidence, fabricating DNA evidence, taking his daughter, and extorting Young to plead guilty. Defendants did this because Young failed to pay $10,000 in cash and leave Virginia. Instead, Young attempted to report their behavior, but was unsuccessful in doing so. (*Id.*)

6. Fourteenth Amendment: defendants deprived Young of life, liberty, and property without due process of law and denied him equal protection of the law by giving his home, vehicle, property, money, and daughter to his wife, and by blackmailing and extorting him. (*Id.* at 43.)

Plaintiff seeks damages in the amount of $10,000,00.  (*Id.* at 44.)

### C. Defendants' motion and evidence

Chief Madison and Det. Bragg vehemently dispute that this incredible incident, or anything like it, happened. According to Chief Madison, he first encountered Young at the Town of Orange Police Department on February 25, 2022. (Madison Decl. ¶ 4.) The police department had a search warrant for Young's DNA in connection with a suspected crime. (*Id.* ¶ 5.) Chief Madison spoke with Young and executed the search warrant. The interaction was recorded on video. (*Id.* ¶ 6.) Chief Madison states that he has had no further interactions with Young since he executed the search warrant on February 25. (*Id.* ¶ 8.) (*Id.* ¶¶ 7, 9; Bragg Decl.

¶¶ 6–8.) And Det. Bragg was not on duty on February 25, 26, or 27, 2022. (Bragg Decl. ¶ 8, Attachment 1.)

Defendants add that the record evidence substantiates their denials. The Town of Orange Police Department uses department-issued TASER energy weapons that are connected to an evidence-management system (Madison Decl. ¶ 10.) Since before 2022, the TASERS are set to automatically activate body-worn cameras and patrol-vehicle cameras that are in the vicinity upon deployment of the TASER. (*Id.* ¶ 11.) Chief Madison searched evidence.com for any logs of body-worn or patrol-vehicle camera activations for February 25 and February 26, 2022, and there are no such records in the area where the incident allegedly occurred. (*Id.* ¶¶ 12–13, Attachments 1, 2.) Chief Madison also searched evidence.com for logs of body-worn or patrol-vehicle activations from February 19 to March 15, 2022. There were no activations during that time near Young's home. The only activation was at the corner of Blue Ridge Drive and Williams Drive where the Town of Orange Police Department is located. (*Id.* ¶¶ 14–15, Attachment 3.)

Department-issued TASERS are also set up to automatically log any deployment of the TASER on evidence.com, including the time and location of the deployment. (*Id.* ¶ 16.) Chief Madison reviewed the records, but there are no logs of any department-issued TASER deployment on February 25 or 26, 2022. (*Id.* ¶ 17, Attachment 4.) The department's digital-storage account has also been set to preserve all data regardless of age. (*Id.* ¶ 18.) Chief Madison is the only user with full access and privileges to delete any department data. (*Id.* ¶ 19.) Evidence.com maintains an audit log for all users that identifies if that user deleted any data. (*Id.* ¶ 20.) Since at least February 23, 2022, Chief Madison claims that has not deleted any

department data on the account. (*Id.* ¶ 21, Attachment 5.) Ultimately, there is no evidence of any interaction involving Chief Madison or Det. Bragg on February 26, 2022, involving the deployment of a TASER. (*Id.* ¶ 22.)

Moreover, Defendants counter that Young's wife voluntarily provided her laptop to the Town of Orange Police Department on the date of the alleged assault, undermining a key detail of Young's account. (*Id.* ¶ 24, Attachment 6.) The laptop was sent to be forensically examined for purposes of investigating the multiple criminal charges pending against Young. (*Id.*) Both Chief Madison and Det. Bragg deny trying to extort Young or attempting to coerce him into confessing to any crimes. (*Id.* ¶ 25; Bragg Decl. ¶ 9.)

Defendants also point out that on February 28, 2022, or approximately a week later, Young was taken to a University of Virginia hospital in Charlottesville after being arrested. (*See* Ex. C, Medical Records.) Young apparently did not report any injuries from the alleged assault by Madison or Bragg during that hospital visit. (*Id.* at 110–16.) Also, after making allegations of a sexual assault by another inmate, Young was taken to a UVA hospital for a Sexual Assault Nurse Examiner ("SANE") exam on January 31, 2023. (*Id.* at 56–58.) There are no notes in the SANE exam report suggesting any prior trauma to Young's genitals or scarring associated with slicing his urethra or pulling off genital warts with pliers. (*Id.*)

### D. Young's response

In response to defendants' motion, Young filed a lengthy declaration, signed under penalty of perjury, and several exhibits. (*See* Young Decl., Exhibits.)[4] Young's declaration

---

[4] These were filed months after Young's response to the motion for summary judgment was due to be filed, and Young did not obtain leave of court to file these documents. Nonetheless, the court will consider them given his status as a *pro se* litigant.

contains several paragraphs of extraneous background information that is not relevant to the claims for relief that he has alleged in his complaint. The court will confine its summary and analysis to statements and assertions that are pertinent to the pending motion for summary judgment.[5]

Young alleges that at approximately 4:35 a.m. on February 25, 2022, he arrived at the Town of Orange Police Department and parked in front of the building. (Young Decl. ¶ 110.) He had been attempting to find out information about the welfare of his wife and children. (*See generally* Young Decl.) Young called the police department as he sat in his car and reached Chief Madison. Young notified Chief Madison that he had arrived and was outside the police department. (*Id.* ¶ 111.) Chief Madison met Young outside. (*Id.* ¶ 112.)

According to Young, he and Chief Madison engaged in a verbal dispute in front of the police department. Both were armed with loaded handguns. (*Id.* ¶ 113.) Chief Madison asked Young to disarm himself and enter the police department to speak with him, but Young refused. (*Id.* ¶¶ 114–15.) Chief Madison told Young that if he did not disarm himself, he would not be given any information about the welfare of his family. Therefore, Young decided to disarm himself and enter the police station. (*Id.* ¶¶ 116–17.)

Once inside, Young claims that Chief Madison instructed another officer to execute a search warrant for Young's DNA by conducting a buccal swab of Young's mouth. (*Id.* ¶¶ 126–27.) Chief Madison then made Young strip naked and inserted a cotton swab into his urethra. (*Id.* ¶ 136.) Young claims Chief Madison also rubbed the swab against genital warts on Young's

---

[5] The court also notes that Young's declaration appears to be missing several paragraphs. (*See* Young Decl. at 68–69 of 133.)

penis, causing them to bleed. (*Id.*) Officers also seized various items, including Young's gun, and searched Young's car. (*Id.* ¶¶ 133, 139–40.) Young was released from custody at approximately 6:10 a.m. (*Id.* ¶ 152.) Chief Madison told Young that he had until 6:00 p.m. to place $10,000 in an unmarked envelope in a mailbox at an address in Gordonsville, Virginia. (*Id.* ¶¶ 190–91.)

According to Young, he left the police department and traveled to Palmyra, Virginia. He arrived at the Palmyra Branch of Truist Banking at approximately 9:10 a.m. (*Id.* ¶ 194.) Once there, he attempted to withdraw $10,000, but he discovered that his wife had withdrawn all the money from their account. (*Id.* ¶¶ 195–97.) Young claims that this occurred soon after he had discovered materials on his wife's laptop depicting her sexually abusing their children with other men. (*Id.* ¶ 198.) Young was trying to gain access to his home to either get the money to pay Chief Madison or retrieve evidence to exonerate him; he spoke with both his attorney and the Town of Orange Police Department to get assistance. (*Id.* ¶¶ 200–16.) Due to his conclusion that law enforcement "would not assist him in gaining access to [his] residence, where [he] held evidence supporting" his innocence (*id.* ¶ 216), Young traveled to his residence in Orange, Virginia, at approximately 11:45 p.m. (*id.* ¶ 217).

Young parked approximately three houses away from his house. (*Id.* ¶ 218.) He proceeded on foot to the back of his house, where he retrieved various items, including his dog, a rifle, and a day pack. (*Id.* ¶ 220.) He then returned to his truck. (*Id.* ¶ 221.) While "developing a plan to turn over [his] wife's laptop and [his] thumb drive to an independent law enforcement agency outside of [his] locality who would not destroy it," Young saw a vehicle pull up behind him. (*Id.* ¶ 222.) He saw two individuals rapidly approaching his driver's

side door. (*Id.* ¶ 223.) Young claims that Chief Madison opened the door and sprayed him in the face with pepper spray. (*Id.* ¶¶ 225–26.) Young attempted to retrieve his gun and, at the same time, his dog was attempting to climb over Young to bite the men trying to get him out of the truck. (*Id.* ¶ 227.) At this point, one of the men tazed Young, pulled him out of the truck, and placed him face down on the ground with both men on top of him. (*Id.* ¶¶ 228–29.) Young heard his dog yelp after a "metallic crack" and then "no longer heard his dog moving or barking." (*Id.* ¶ 231.) Young was placed in a police SUV and driven away from the location for about 4–6 minutes. (*Id.* ¶¶ 235, 240.) The vehicle stopped and both men removed Young from the back of the vehicle. (*Id.* ¶ 240.) The man placed Young face down onto gravel, kicked the back of his head, and kicked the middle of his back. (*Id.* ¶ 241.)

Young adds that the men told Young they had heard about a laptop and a thumb drive that could prove Young's innocence. Young told them he did not know what they were talking about, and that he had been attempting to acquire the $10,000 that Chief Madison had demanded. Young said that he had half of the money and would be able to acquire the other half. (*Id.* ¶ 242.) Young claims that one of the men advised Young that he knew Young liked to choke his wife and rape his stepdaughter. Det. Bragg pulled Young's pants down past his knees and bent his feet backwards to his shoulder blades. (*Id.* ¶ 243.) According to Young, he felt a sharp stinging pain in his left knee. Det. Bragg told Young to open his mouth, and Det. Bragg shoved a handgun into Young's mouth, chipping several lower teeth, breaking one of his top teeth, cutting his bottom lip, and tearing the right edge of his mouth. (*Id.* ¶ 244.) Det. Bragg threatened Young that, if he screamed, Det. Bragg would kill him. (*Id.* ¶ 246.)

While Det. Bragg had a handgun in his mouth, Young claims that Chief Madison placed a cold object against Young's anus and pulled his butt cheeks open. (*Id.* ¶ 247.) Chief Madison inserted this object in and out of Young's anus telling him that he "wanted me to know what it felt like." (*Id.*)

According to Young, Det. Bragg then asked him where he had put the laptop and thumb drive, and Young said that he "did not know what he was talking about." (*Id.* ¶¶ 248–49.) At this point, Chief Madison told Det. Bragg to "get a bag." (*Id.* ¶ 249.) The men dragged Young by the arms towards a chain-link fence. (*Id.* ¶ 250.) They hooked handcuffs on Young's wrist and tied him to one of the fence posts. (*Id.* ¶ 252.) Young claims that Chief Madison again asked Young where he had placed the laptop and thumb drive, and Young again denied knowing that he was talking about. (*Id.* ¶ 253.) Det. Bragg placed something "airtight" over Young's head, and Chief Madison began slapping Young in his scrotum, which was exposed due to Young's pants being below his knees. (*Id.* ¶ 254.) This happened for 3–5 minutes, in intervals, while the men repeated their questions about the location of the laptop and thumb drive. (*Id.* ¶¶ 255–57.) Finally, after Young could not endure further "abuse," he claims that he told the men that he had two laptops and a thumb drive in his day pack (a backpack) on the passenger floorboard of his truck. (*Id.* ¶ 258.)

Young told the men that his laptop and thumb drive had information related to payments he made to the Madison County Sheriff's Office, and his wife's laptop had information to prove that Young was not sexually abusing his stepchildren. Also, there was $5,000 in cash in the backpack, which was half of the payment intended for Chief Madison.

- 14 -

(*Id.* ¶ 260.) Chief Madison destroyed the laptops and thumb drive by throwing them on the gravel and stomping on them several times. (*Id.* ¶ 261.)

According to Young, the men then proceeded to extract more DNA material from Young; they swabbed his mouth and forced him to masturbate and ejaculate onto a "white fabricate [*sic*] object." (*Id.* ¶¶ 269, 271.) Young claims that Chief Madison also told him to spit on the object, but Young could not because of how dry his mouth was. (*Id.* ¶ 273.) Det. Bragg then led Young back to the side of the SUV with his pants still hanging down. (*Id.* ¶ 274.) Chief Madison told Young that "every time [he] looked at [his] penis for the rest of [his] life, he wanted [him] to remember tonight, and what happened when [he] tried to report everyone." (*Id.* ¶ 277.) Using a multi-tool with pliers and a knife, Chief Madison pulled two of the genital warts off the top of Young's penis. (*Id.* ¶ 279.) After further struggle, Chief Madison sliced Young's penis with the knife across the urethra. (*Id.* ¶ 283.) The men drove Young back to his truck and removed the handcuffs. (*Id.* ¶ 285.) Chief Madison warned Young that "people went missing around [them] all the time, and unless [Young] wanted to be added to that list, [he] needed to take [his] guilty plea, and learn to shut up." (*Id.* ¶ 286.)

Young states that the entire incident lasted approximately 90 minutes. (*Id.* ¶ 288.)

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315−16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.").

## III.

### A.

Young has alleged that defendants' arrest of him on February 26, 2022, violated his rights under the Fourth, Eighth, and Fourteenth Amendments. When an alleged excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which

guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Thus, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395 (emphasis in original). Accordingly, because Young was a free citizen at the time of his alleged arrest and not a pretrial detainee or convicted inmate, he may only pursue his § 1983 excessive force claim under the Fourth Amendment.

Whether the force used was unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest." *Graham*, 490 U.S. at 396; *Rambert v. City of Greenville*, 107 F.4th 388, 397 (4th Cir. 2024). The "reasonableness" of a particular use of force must be judged from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. The "objective standard adequately protects an officer who acts in good faith." *Kinglsey v. Hendrickson*, 576 U.S. 389, 399 (2015).

Defendants argue that they are entitled to summary judgment because the assault that Young claims occurred on February 26, 2022, never happened. Defendants confidently assert

that it is "undisputed" that Young's story is entirely fabricated. (Def.'s Br. 7 [ECF No. 37].) In addition to their own denials, defendants note that, if a TASER had been used, it would have been logged and preserved, and a body camera or vehicle camera would have been activated, but no such record or video evidence exists. Also, Defendants point out that there is no evidence of any injury or scarring to Young's genitals in the cited medical records from later hospital visits, and Young's assertions about his wife's laptop are disproven because his wife brought the laptop to the police station.

But Chief Madison and Det. Bragg's denials are directly contradicted by the lengthy and detailed declaration that Young provided. *See* Fed. R. Civ. P. 56(c)(1)(A) (permitting parties to show genuine dispute of material of fact by using "affidavits or declarations"). Because it is purportedly based on personal knowledge and first-hand experience, Young's declaration is sufficient to defeat summary judgment, regardless of how outlandish it seems. *See Alexander v. Connor*, 105 F.4th 174, 178 (4th Cir. 2024); *Mann v. Failey*, 578 F. App'x 267, 273 n.2 (4th Cir. 2014) ("The record could defeat summary judgment even if the evidence consisted exclusively of so-called self-serving declarations from the nonmovant."); *Richardson v. Wilson*, 404 F. Supp. 2d 887, 891 (W.D.N.C. 2005) ("A party's own affidavit, containing relevant information of which he has first[-]hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.").[6] Moreover, at this stage, all factual disputes should be resolved in the non-moving party's favor, and all reasonable inferences should favor him as well. *See First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968) (noting that,

---

[6] The court recognizes that Young's declaration was filed in an untimely manner. But it was filed on July 10, 2024, and Defendants have not objected to the filing or sought leave to respond to it.

to defeat summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing version of the truth at trial").

Further, Defendants overstate the significance of the evidence they have provided in support of their motion. For instance, the fact that a camera was not activated or a TASER use was not logged tends to disprove only Young's allegations about the use of a TASER.[7] It does nothing to undermine Young's overarching claim, supported by the sworn statements in his declaration, that he was brutally tortured and sexually assaulted at the hands of Defendants.[8] Similarly, later medical evidence showing no scarring to the genitals does not necessarily undermine these allegations.  While facts that, accepted as true, would show that Young lied about the use of a TASER or other details of the assault as he claims it happened may undermine Young's credibility, the Fourth Circuit recently reminded this court that a plaintiff's sworn account will suffice to defeat summary judgment, even if it is far-fetched and largely undermined by overwhelming evidence to the contrary. *See Clark v. Payne*, No. 21-6634, 2023 U.S. App. LEXIS 19774, at *1–3 (4th Cir. Aug. 1, 2023) (per curiam).

Finally, Defendants do not even argue that their alleged actions were objectively reasonable under the Fourth Amendment. Young's allegations, which he supported with his declaration, taken as true are sufficient to allege and establish that Defendants' alleged actions—including suffocation with a plastic bag, sodomy with a gun, and killing Young's

---

[7] This assumes, of course, that the evidence of the TASER, its logging, the software, and the trustworthiness of Chief Madison's self-serving affidavit about what the records do and do not show are not challenged. Since Young claims that he *was* tased, it follows that he challenges all of those things.

[8] The court also notes, moreover, that defendants have not provided evidence that they were wearing body cameras or that the car they used had a camera.

dog—if true were objectively unreasonable and a violation of the Fourth Amendment. And because the court *must* accept his sworn allegations as true, summary judgment is simply not an appropriate vehicle to end this litigation.

For these reasons, the court finds that defendants are not entitled to summary judgment on Young's excessive-force claim.

## B.

Aside from his claims based on the excessive use of force, Young has brought additional claims, numbered five and six in his complaint, that are not based on the alleged excessive use of force, but are based on allegations of extortion and coercion. Defendants do not offer any argument in support of being entitled to summary judgment on these claims. The court express no opinion on the viability of these claims and will not manufacture arguments to support Defendants' motion.[9] Accordingly, their motion will be denied to the extent Defendants seek summary judgment on these claims.

## IV.

For these reasons, the court will grant in part and deny in part Defendants' motion for summary judgment.

---

[9] Defendants' only relevant argument is that Young cannot state an equal protection claim because he is not in a protected class. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021). The court agrees and will dismiss any claims in the complaint that are premised on equal protection. In one of his other lawsuits, Young conceded, through counsel, that he is not a member of a protected class. *See Young v. Sparks*, Case No. 7:23-cv-00180 (W.D. Va.) [ECF No. 48 at 11].

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 11th day of September, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE